UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CAREN DAVIS,

                Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY

                Defendant.
_____

DECISION & ORDER

17-CV-6804P

**PRELIMINARY STATEMENT**

Plaintiff Caren Davis ("Davis") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income ("SSI"). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge. (Docket # 7).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 9, 11). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

**DISCUSSION**

I. **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner

applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v.*

*Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity ["RFC"] to perform his past work; and

(5) if not, whether the claimant retains the residual functional capacity to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the

3

national economy [which] the claimant could perform.'"  *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II. Davis's Contentions

Davis contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 9, 12). Specifically, she argues that the ALJ purported to give "great weight" to the medical opinion of consultative examiner Dr. Kristina Luna, but failed to account in her RFC for Dr. Luna's opined limitations. (Docket ## 9-1 at 11-15; 12 at 1-3). Furthermore, Davis maintains that the ALJ's credibility analysis is flawed. (Docket ## 9-1 at 15-18; 12 at 3-4). I address each argument in turn below.

## III. Analysis

### A. Dr. Luna's Opinion

Davis argues that the ALJ "failed to provide an explanation why she failed to incorporate Dr. Luna's opined limitations that [p]laintiff had marked limitations with interacting with supervisors, coworkers, and the public, or an alternative explanation of why she believed her RFC finding accounted for the limitations." (Docket # 9-1 at 13). In Davis's view, Dr. Luna's opinion "indicates [Davis] would be unable to respond appropriately to supervisor[s] or workers" (*id.* at 14) and therefore supports a finding of disability because Davis cannot meet the basic mental demands of unskilled work. (*Id.* (citing Social Security Regulation 85-15, 1985 WL 56857, *4 (1985))).

4

The Commissioner responds that the ALJ properly considered Dr. Luna's opinion and that the ALJ's RFC accounts for the marked limitations opined by Dr. Luna. (Docket # 11-1 at 17) (there "is simply no inconsistency between the ALJ's assignment of 'great weight' to Dr. Luna's opinions and [the ALJ's] RFC finding"). The Commissioner also argues that "even assuming the ALJ should have assigned more stringent social limitations," such error is harmless because none of the jobs identified by the ALJ at step five of the sequential process – laundry worker, final assembler, and table worker – requires significant interaction with others. (*Id.*).

Kristina Luna, Psy.D, performed a psychiatric evaluation of Davis on April 13, 2016. (Tr. 484-91). In her medical source statement, Dr. Luna opined that Davis had no limitations in her ability to understand, remember, and carry out simple instructions; make appropriate judgments on simple or complex work-related decisions; understand and remember complex instructions; perform simple tasks independently; maintain attention and concentration; maintain a regular schedule; and learn new tasks. (Tr. 487, 489). She further opined that Davis had mild limitations in her ability to carry out complex instructions and perform complex tasks independently, and was moderately limited in her ability to appropriately deal with stress and respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 487, 489-90). Finally, Dr. Luna opined that Davis had marked limitations relating adequately with others, including her ability to interact appropriately with the public, supervisors, and coworkers. (*Id.*).

The ALJ gave "great weight" to Dr. Luna's opinion because it was "rendered after a thorough review of the entirety of the evidence by a physician with extensive program and professional expertise[, and it was] also consistent with the results of [the consultative] examination and other objective findings . . . [,] as well as the claimant's high level of daily

5

activities." (Tr. 16). The ALJ limited Davis to less than a full range of light work, namely, "unskilled light work that does not require more than short, simple interactions with supervisors, coworkers, or the public" and "tasks that do not require working in conjunction with others and predominately involve working with objects rather than people." (Tr. 14). The ALJ also limited Davis to a "low-stress environment," defined as "one requiring routine daily tasks and duties in the same place that do not significantly change in pace or location on a daily basis." (*Id.*). Based on these limitations, and in consultation with vocational expert Christine DiTrinco (the "VE"), the ALJ found that Davis could perform the occupations of laundry worker (DOT # 302-685.010), final assembler (DOT # 789-687.046), and table worker (DOT # 521-687.102). (Tr. 17).

Initially, I reject Davis's contention that Dr. Luna opined that Davis was "*unable* to respond appropriately to supervisor[s] or workers" and that the VE's testimony confirmed that Dr. Luna's limitations were "work preclusive." (Docket # 9-1 at 14) (emphasis supplied). The medical source statement completed by Dr. Luna defined "marked" limitation as a "serious limitation" that causes a "substantial loss in the ability to effectively function." (Tr. 489). An "extreme" limitation, by contrast, meant a "major limitation" that results in "no useful ability to function." (*Id.*).

Contrary to Davis's contention, "marked" limitations do not necessarily constitute an inability to perform work. *See*, *e.g.*, *Miller v. Berryhill*, 2017 WL 4173357, *5-6 (W.D.N.Y. 2017) (consultative examiner's opinion that plaintiff had "moderate to marked" limitations in appropriately dealing with stress "d[id] not necessarily mandate a conclusion of disability due to the complete inability to deal with stress[;] [o]ther courts in this Circuit have affirmed decisions denying benefits in cases where the record contains an opinion that the claimant has a 'marked'

6

limitation in performing a work-related function[;] . . . [consultative examiner's] report d[id] not, on its face, indicate [p]laintiff cannot handle any stress at all"); *Fiducia v. Comm'r of Soc. Sec.*, 2015 WL 4078192, *4 (N.D.N.Y. 2015) ( "[t]he fact that plaintiff was found to have a marked limitation interacting with others does not conclusively demonstrate that she is unable to work"). Here, the ALJ properly found that Dr. Luna's opinion did not necessarily mean that Davis was unable to work, and the questions posed to the VE by Davis's representative at the hearing thus did not accurately reflect limitations found by Dr. Luna. (*See* Tr. 43-44) (asking VE about a hypothetical individual who was "*unable* to ask simple questions or request assistance," had the "*inability* to accept instructions or respond appropriately to criticism from supervisors," or the "*inability* to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes") (emphasis supplied).

Moreover, the marked limitations found by Dr. Luna are not necessarily inconsistent with the ALJ's restrictions to "short, simple interactions with supervisors, coworkers, or the public" and to "tasks that do not require working in conjunction with others and predominately involve working with objects rather than people." (Tr. 14). *See*, *e.g.*, *Miller v. Berryhill*, 2017 WL 4173357 at *5-6 (ALJ properly accounted for consultative examiner's opinion that plaintiff had "moderate to marked" limitations in appropriately dealing with stress by restricting plaintiff to "unskilled jobs that involve only occasional changes in the work environment, that require her to make only occasional work-related decisions and judgments, and do not entail teamwork or collaboration"); *Phelps v. Colvin*, 2017 WL 372738, *2 n.3 (W.D. Pa. 2017) ("[a] limitation to occasional interaction [with supervisors and co-workers] may accommodate a marked limitation"); *Fiducia v. Comm'r of Soc. Sec.*, 2015 WL 4078192 at *4 (rejecting plaintiff's argument that she was unable to work due to doctors' opinion that she had

marked limitations with respect to interacting appropriately with the public, with supervisors, and with coworkers; "[t]he fact that plaintiff was found to have a marked limitation interacting with others does not conclusively demonstrate that she is unable to work, *particularly given the fact that the ALJ limited plaintiff to work that does not require more than occasional interaction with the public and co-workers*") (emphasis supplied). In addition, I further note that none of the jobs identified by the ALJ at step five requires significant taking of instructions or helping others. *See* DICOT 302-685.010 Laundry Worker, 1991 WL 672657 (2016); DICOT 789-687.046 Final Assembler, 1991 WL 681261 (2016); DICOT 521-687.102 Picking-Table Worker, 1991 WL 674230 (2016).

> B. **<u>The ALJ's Credibility Assessment</u>**

I turn next to Davis's contention that the ALJ's credibility analysis is flawed because she "relied on mischaracterizations of the record" in discrediting Davis's testimony. (Docket # 9-1 at 15-18). For the reasons explained below, I agree that the ALJ erred in evaluating Davis's credibility and that remand is warranted on this basis.

An ALJ's credibility assessment should reflect a two-step analysis. *Robins v. Astrue*, 2011 WL 2446371, *4 (E.D.N.Y. 2011). First, the ALJ must determine whether the evidence reflects that the claimant has a medically determinable impairment or impairments that could produce the relevant symptom. *Id.* (citing 20 C.F.R. § 404.1529). Next, the ALJ must evaluate "the intensity, persistence and limiting effects of the symptom, which requires a credibility assessment based on the entire case record." *Id.* (citing 20 C.F.R. § 404.1529(c)). The relevant factors for the ALJ to weigh include:

> (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes

8

> or has taken to alleviate her pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of her pain or other symptoms; (6) any measures the claimant uses or has used to relieve her pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

*Id.* (citing 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii)). "It is the function of the ALJ, not the court, to assess the credibility of witnesses." *Hall v. Berryhill*, 2018 WL 6011167, *4 (W.D.N.Y. 2018) (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 35 (2d Cir. 2013)). Yet, "[i]t is clearly improper for an ALJ to discount a claimant's credibility by relying on a mischaracterization of his or her testimony." *Primes v. Colvin*, 2016 WL 446521, *4 (W.D.N.Y. 2016); *see also Branca v. Comm'r of Soc. Sec.*, 2013 WL 5274310, *13 (E.D.N.Y. 2013) ("[a]lthough the ALJ may choose what weight to give to plaintiff's testimony and other evidence in the record, th[e] failure to consider certain testimony, or misconstruing such testimony, warrants a remand in this case") (collecting cases).

Here, the ALJ found that Davis's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 15). In reaching this determination, the ALJ placed significant weight on two specific portions of the record evidence – Davis's alleged inconsistent statements regarding her level of education and her status as "a single mother caring for four small children with the help of her parents." (Tr. 16). The ALJ concluded that "inaccurate information on matters *so integral* to determining disability and [Davis's] ability to perform work activities suggests that *much* of what [Davis] has alleged may be similarly unreliable." (*Id.* (emphasis supplied)). The Court finds that, without further explanation, it was

9

error for the ALJ to rely on those two relatively minor discrepancies to discredit "much" of Davis's allegations of disability.

The ALJ noted that Davis "provided conflicting details regarding her educational level." (*Id.*). As support, the ALJ cited the fact that Davis's Adult Disability Report indicated that she had completed the twelfth grade, yet Davis testified at the hearing that she had not completed high school or obtained a GED. (*Id.* (citing Tr. 29, 177)). The ALJ further observed that Davis's disability report and her testimony were "in conflict[] with [Davis's] report to her mental health counselor that she ha[d] a bachelor's degree." (*Id.* (citing Tr. 370)).

Davis testified at the hearing that she was "one credit short" of graduating from high school, and that she has attempted to obtain a GED "on and off," but could "never follow through." (Tr. 29). As stated above, the ALJ found her testimony inconsistent with Davis's Adult Disability Report, which indicated that Davis had completed the twelfth grade. (Tr. 177). Such an inconsistency hardly qualifies as a matter "so integral to determining disability and [Davis's] ability to perform work activities," particularly where courts have found that an "inconsistency regarding plaintiff's education is minor and inconsequential." *Chou v. Astrue*, 2012 WL 6214431, *8 (C.D. Cal. 2012) (finding that ALJ improperly discounted plaintiff's credibility based, in part, on ALJ's observation that plaintiff reported in his disability application that he "completed school through the tenth grade," but "represented to others, including the ALJ, that he completed high school and earned a diploma"; "this inconsistency regarding plaintiff's education is minor and inconsequential"); *see also Gonzalez v. Astrue*, 253 F. App'x 654, 655 (9th Cir. 2007) (noting that inconsistencies related to education are "minor [and] non-material"); *Stevens v. Colvin*, 2015 WL 4629311, *4 (W.D. Okla.) (accepting plaintiff's testimony that she had completed the eighth grade as inconsistent with one report in the record

10

indicating plaintiff had only completed the sixth grade, but finding such discrepancy could not "stand as substantial evidence in support of the ALJ's finding that [p]laintiff's testimony was not credible"; "while this minor discrepancy in [p]laintiff's statements is relevant to some limited extent, it is not sufficient in itself to support the ALJ's finding that [p]laintiff's testimony was not credible"), *report and recommendation adopted by*, 2015 WL 4637449 (W.D. Okla. 2015).

Moreover, although the ALJ is correct that Dr. Dinesh Nanavati reported in *one* progress note that "[Davis] graduated and has Bachelor [sic] degree" (Tr. 16 (citing Tr. 370)), the ALJ made no mention of the fact that Davis's hearing testimony is consistent with other progress notes reflecting her discussions with mental health treatment providers about attempting to obtain her GED (*see*, *e.g.*, Tr. 361 ("[s]upporting patient's plan to obtain her GED and reinforced patient's plan to begin class in January[;] [e]xplored how enrolling in class has helped patient to feel more in control and goal oriented"); Tr. 367 ("[p]atient identified readiness to engage in a GED program")). Absent explanation from the ALJ, it is unclear how these minor discrepancies are so fundamental to the disability determination that they cast doubt on "much of what [Davis] has alleged," especially where, as here, the ALJ did not ask Davis at the hearing about the disability report's reference to her level of education or Dr. Nanavati's progress note. *See Fortenberry v. Astrue*, 2011 WL 1130863, *4 (N.D. Okla. 2011) ("[i]f the ALJ thought that information was pertinent to the disability determination, one would expect the ALJ to ask about it").

In addition, the ALJ noted that Davis "provided inconsistent information regarding her activities of daily living *in that she alleged that she is a single mother caring for four children with the help of her parents*." (Tr. 16 (emphasis supplied)). Specifically, citing Davis's hearing testimony, the ALJ contrasted Davis's alleged testimony that she is a "single

11

mother caring for four children with the help of her parents" with reports by various medical providers that Davis had a husband who was a police officer (*id.* (citing Tr. 526)) and was deployed (*id.* (citing Tr. 556)). The ALJ stated that "[t]hese differing reports raise questions about how much housework and childcare the claimant is responsible for." (*Id.*).

First, it is far from clear that Davis has provided inconsistent testimony or information. Although Davis testified at the hearing that she lived with her parents and her children and that her parents help to raise her children, she never explicitly testified that she was a "single mother," as stated by the ALJ. (*Id.*). Indeed, the ALJ never asked Davis about her marital status at the hearing. To the extent that the ALJ discredited Davis's allegations based on inconsistencies regarding her marital status, the evidence cited by the ALJ is not inconsistent with Davis's testimony at the hearing. *See*, *e.g.*, *Fluckes v. Comm'r of Soc. Sec.*, 2017 WL 2306445, *4 (E.D. Mich. 2017) ("[t]here is, in fact, no inconsistency in the statements the ALJ found to be inconsistent[;] [t]he fact that plaintiff lives alone and can take care of his personal needs and household chores is not inconsistent with his testimony that he experiences anxiety attacks lasting 'a couple hours' three to four time per week[;] . . . [i]n short, the ALJ's explanation for discounting plaintiff's testimony is inadequate[;] . . . [o]n remand, the ALJ must reassess plaintiff's credibility and provide an adequate, logical, record-based explanation to the extent he rejects plaintiff's testimony").

Furthermore, the ALJ apparently accepted Davis's statements that she could perform such activities as caring for her four children, cooking several days per week, doing laundry twice a week, driving, using public transportation, and dressing, bathing, and grooming herself daily. (Tr. 15). It is unclear how this information about her daily activities conflicts with Davis's testimony that her parents help her in raising her children or with reports that her

12

husband is a police officer and/or deployed, let alone conflicts to such a degree that it "raise[s] questions about how much housework and childcare [Davis] is responsible for." (Tr. 16).

For these reasons, this Court finds that the ALJ erred by placing such significant weight on two relatively minor discrepancies in the evidence – portions of which, in the Court's view, are not even clearly inconsistent – to conclude that "much of what [Davis] has alleged may be similarly unreliable." (*Id.*). Considering the ALJ's characterization of the importance of these alleged inconsistencies, this Court cannot conclude that the ALJ's error in the credibility assessment was harmless. *See Fofana v. Astrue*, 2011 WL 4987649, *19 (S.D.N.Y.) ("of the inconsistencies in [p]laintiff's reporting noted by the ALJ, few relate to [p]laintiff's psychiatric history and symptoms . . . , while the majority relate to his personal life history (for example, the level of education and the age of his children)[;] [t]here is a difference between finding someone to lack credibility regarding the severity of his symptoms, and finding someone to be a poor historian[;] . . . [u]pon remand, in considering [p]laintiff's inconsistent statements, the ALJ should look to whether the inconsistencies relate to the severity of [p]laintiff's disorders, or whether they are unrelated"), *report and recommendation adopted by*, 2011 WL 5022817 (S.D.N.Y. 2011).

On remand, the ALJ is directed to reassess Davis's credibility and explain fully the basis for her credibility determination – particularly if it rests on alleged inconsistencies about Davis's educational history and marital status – in accordance with the applicable regulations and standards, and after considering all of the record evidence as a whole, including Dr. Luna's opinion.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 11)** is **DENIED**, and Davis's motion for judgment on the pleadings **(Docket # 9)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
April 26, 2019